IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| JAMES EDWIN RICE | : | 1:20CR458-1 | |
| SUSAN EILEEN RICE | : | 1:20CR458-2 | |

## GOVERNMENT'S TRIAL BRIEF

The United States, by and through Sandra J. Hairston, Acting United States Attorney for the Middle District of North Carolina, respectfully submits this trial brief. The United States wishes to advise the Court of certain legal and evidentiary issues that may arise during trial. The United States may supplement this brief prior to trial.

## I. STATUS OF THE CASE

Trial is set to begin on September 14, 2021, before the Honorable Catherine C. Eagles. The Defendants James E. Rice and Susan E. Rice are charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; one count of evasion of payment, in violation of 26 U.S.C. § 7201; two counts of failure to pay over trust fund taxes to the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7202; three counts of failure to file an individual income tax return, in violation of 26 U.S.C. § 7203; and the

Defendant James E. Rice is charged with three counts of failure to file corporate tax returns, in violation of 26 U.S.C. § 7203. Estimated trial time for the government's case is four days. The government expects to call approximately seventeen witnesses in its case-in-chief. The government intends to offer approximately 237 exhibits in its case-in-chief. The government reserves the right to supplement the exhibit list during trial. The United States will be represented by Trial Attorneys Alexander Effendi and Michael L. Jones of the U.S. Department of Justice, Tax Division.

## II. <u>LEGAL BACKGROUND</u>

### A. **Employment Taxes**

Employers are required to deduct and withhold federal income and FICA taxes, i.e. Social Security and Medicare taxes, from their employees' wages. 26 U.S.C. §§ 3102, 3402. These withheld payroll taxes are held in trust for the United States and are often termed "trust fund taxes." *See Slodov v. United States*, 436 U.S. 238, 243 (1978). These "trust fund taxes" do not belong to the employer. They are for the exclusive use of the United States and may not be used for any other purpose, including paying the employer's business expenses. 26 U.S.C. §§ 3102(b), 3403, 7501(a). For an employer to spend withheld payroll taxes on business expenses to keep their business afloat would essentially make the government an involuntary creditor. The government cannot be

2

made an "unwilling partner in a floundering business." *Collins v. United States*, 848 F.2d 740, 741–42 (6th Cir. 1988).

Once the payroll taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against the employees' individual tax liabilities, regardless of whether such taxes are actually paid to the United States. 26 U.S.C. § 31(a); 26 C.F.R. § 1.31-1(a); *Slodov,* 436 U.S. at 243. Thus, when an employer withholds payroll taxes from employees' wages but does not pay them over to the government, the United States essentially suffers a double loss, in that it does not receive the payroll taxes that lawfully belong to the government, and in that it affirmatively pays the Social Security, etc. contributions for the employees for the delinquent period.

Employers are required to pay over the payroll taxes to the IRS on a periodic basis, generally either monthly or semi-weekly. 26 C.F.R. § 31.6302-1. In addition, most employers are required to file with the IRS, on a quarterly basis, an Employer's Quarterly Federal Income Tax Return IRS Form 941. The Form 941 is due at the end of the month following the end of each calendar quarter and reports the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of FICA taxes due, and the total tax deposits. 26 C.F.R. § 31.6011 (a)(1).

3

## B.    Conspiracy to Defraud the United States

Count One of the Indictment charges the defendants with conspiracy to defraud the United States. Title 18, United States Code, Section 371 provides, in relevant part:

> If two or more persons conspire to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be guilty of an offense against the United States.

18 U.S.C. § 371.

According to the Supreme Court, "To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful government functions by deceit, craft, trickery, or at least by means that are dishonest." *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924). When the fraud involves the tax laws, the government alleges that the defendant acted for the purpose of "impeding, impairing, obstructing, or defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, or collection of revenue: to wit, income taxes." *United States v. Klein*, 247 F.2d 908, 915 (2nd Cir. 1957).

In a so-called *Klein* conspiracy, the following elements must be proved beyond a reasonable doubt:

4

1. The existence of an agreement;

2. An overt act by one of the conspirators in furtherance of the agreement's objectives; and

3. An intent on the part of the conspirators to agree, as well as to defraud the United States.

*United States v. Vogt*, 910 F.2d 1184, 1202 (4th Cir. 1990).

## 1. The agreement

According to the Fourth Circuit, the government must prove that "an agreed upon objective of the conspiracy was to thwart the IRS's efforts to determine and collect . . . taxes." *United States v. Hairston*, 46 F.3d 361, 374 (4th Cir. 1995). Further, a *Klein* conspiracy conviction will not stand "where impeding the IRS is only a collateral effect of the conspiracy." *Id.*

"It is not necessary to prove a formal agreement to establish a conspiracy in violation of federal law; a tacit or mutual understanding among or between the parties will suffice." *United States v. Depew*, 932 F.2d 324, 326 (4th Cir. 1991). Whereas the government must prove that the defendant conspired with at least one other person, *see United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967), it makes no difference whether the person is another defendant or even named in the indictment. *Rogers v. United States*, 340 U.S. 367, 375 (1951); *see also United States v. Anderson*, 611 F.2d 504, 511 (4th Cir. 1979).

5

### 2. Overt act

In order to establish a conspiracy under Section 371, the government must prove that a member of the conspiracy committed an overt act in furtherance of the conspiracy. The function of the overt act requirement is to show that the conspiracy "is at work" and is not simply an agreement existing solely in the minds of the conspirators. *Yates v. United States*, 354 U.S. 298, 334 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 12 (1978).

An overt act is any act done by a member of the conspiracy for the purpose of carrying out or accomplishing the object of the conspiracy. *United States v. Falcone*, 311 U.S. 205, 210 (1940); *United States v. McKee*, 506 F.3d 225, 243 (3d Cir. 2007); *United States v. Ross*, 190 F.3d 446, 450 (6th Cir. 1999); *United States v. Davis*, 965 F.2d 804, 811–12 (10th Cir. 1992). Because the purpose of the overt act requirement is merely to show that the conspiracy is at work, the overt act need not be criminal in character. *Yates*, 354 U.S. at 334; *Braverman v. United States*, 317 U.S. 49, 53–54 (1942). Indeed, it may be totally legal in itself. *See, e.g.*, *United States v. Hermes*, 847 F.2d 493, 495–96 (8th Cir. 1988). The government is not required to prove all of the overt acts alleged in an indictment. Proof of at least one overt act committed in

furtherance of the conspiracy is sufficient. *United States v. Anderson*, 611 F.2d 504, 510 (4th Cir. 1979); *United States v. Adamo*, 534 F.2d 31, 38 (3d Cir. 1976).

The government is not required to disclose during pre-trial discovery all of the overt acts it intends to establish at trial. *United States v. Murray*, 527 F.2d 401, 411 (5th Cir. 1976); *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); *Cook v. United States*, 354 F.2d 529, 531 (9th Cir. 1965). Moreover, the government may prove at trial overt acts not charged in the indictment. *United States v. Lewis*, 759 F.2d 1316, 1344 (8th Cir. 1985); *United States v. Diecidue*, 603 F.2d 535, 563 (5th Cir. 1979); *United States v. Fassoulis*, 445 F.2d 13, 19 (2d Cir. 1971).

### 3. Intent

Once a conspiracy has been proven, the evidence "only need establish a slight connection between any given defendant and the conspiracy to support conviction." *United States v. Strickland*, 245 F.3d 368, 385 (4th Cir. 2001). A defendant need not have knowledge of the details of the conspiracy, *United States v. Blumenthal*, 322 U.S. 539, 557 (1947), and a defendant may be convicted despite having played a minor role in the overall conspiracy. *United States v. Roberts*, 881 F.2d 95, 101 (4th Cir. 1999).

7

To sustain a conviction, "[T]here only needs to be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation." *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984). The government is only required to prove one overt act in furtherance of the conspiracy, even if multiple overt acts are alleged in the indictment. *Anderson*, 611 F.2d at 510.

## C.  Failure to Pay Over Trust Fund Taxes

Counts Three through Four of the Indictment charges the defendants with willfully failing to pay over payroll taxes to the United States for the third and fourth quarters of 2014. Title 26, United States Code, Section 7202 reads in pertinent part as follows:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax . . . shall be guilty of a felony[.]

26 U.S.C. § 7202.

To establish a violation of Section 7202, the government must prove that the defendants: (1) had a duty to collect, account for, or pay over the payroll taxes; (2) failed to collect, account for, or pay over the payroll taxes; and (3) acted willfully. *See United States v. Lord*, 404 F. App'x 773, 775 (4th Cir. 2010); *United States v. Gilbert*, 266 F.3d 1180, 1185 (9th Cir. 2001).

8

### 1.     Duty to Collect, Account for, or Pay Over

A person is responsible for collecting, accounting for, or paying over payroll taxes if he or she had the authority to exercise significant control over the company. *Erwin v. United States*, 591 F.3d 313, 321 (4th Cir. 2010);[1] *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987). The term "responsible person" is broad and may include many individuals connected with a corporation, and more than one individual may be the responsible person for an employer. *Erwin*, 591 F.3d at 321; *see also Johnson v. United States*, 861 F. Supp. 2d 609, 621 (D. Md. 2012), *aff'd*, 734 F.3d 352 (4th Cir. 2013); *Caterino v. United States*, 794 F.2d 1, 5 (1st Cir. 1986) ("Courts have explicitly given the word 'responsible' a broad interpretation."). The Fourth Circuit's analysis of this inquiry is guided by a list of non-exclusive factors, such as whether the taxpayer is an officer, whether he or she controls the corporation's day-to-day operations, whether he or she has check-signing authority, and whether he or she has the ability to hire and fire employees. *Johnson*, 861 F. Supp. 2d at 621–22; *Erwin*, 591 F.3d at 321.

---

[1] Section 7202's civil counterpart is 26 U.S.C. § 6672.  Because the statutory language for "responsible" person is virtually identical in each statute, case law construing § 6672 is helpful in construing § 7202.  *Cf. Slodov*, 436 U.S. at 247 (analyzing § 6672 and § 7202 alongside one another).

### 2. Failure to Collect or Account for and/or Pay Over

The government need only prove that the defendants willfully failed to pay over the payroll taxes in order to satisfy the second element of 26 U.S.C. § 7202. *See Gilbert*, 266 F.3d at 1185; *United States v. Thayer*, 201 F.3d 214, 220 (3d Cir. 1999) (noting that to interpret the statute in the conjunctive would lead to the incongruous result of criminalizing a failure to collect a tax, while permitting the collecting the tax, reporting it to the IRS, and spending it for one's "own selfish purposes"). Thus, even if the defendant collected and accounted for the tax, but ultimately did not pay over the tax, the second element of the crime is satisfied.

### 3. Willfulness

The government must also prove that the defendants acted willfully. The Supreme Court has defined willfulness in prosecutions for criminal tax violations as a voluntary, intentional violation of a known legal duty. *Cheek v. United States*, 498 U.S. 192, 200–01 (1991); *United States v. Pomponio*, 429 U.S. 10, 12 (1976);[2] *United States v. Bishop*, 412 U.S. 346, 360 (1973). The government, however, does not have to show any additional bad purpose or evil

---

[2] The Supreme Court further held that, because "[t]he trial judge . . . adequately instructed the jury on willfulness," then "[a]n additional instruction on good faith was unnecessary," *United States v. Pomponio*, 429 U.S. 10, 13 (1976); *see also Cheek*, 498 U.S. at 201.

motive, other than the above-defined violation. *See Cheek*, 498 U.S. at 200–01 (1991); *Gilbert*, 266 F.3d at 1185 (opining that bad faith or bad purpose was not required to prove willfulness in violation of 26 U.S.C. § 7202).

All the government needs to show is that payments were voluntarily and intentionally made to creditors other than the United States with knowledge that the withheld funds were due to the government. There is no separate requirement that the government must prove that those payments were without justification. *See United States v. Easterday*, 564 F.3d 1004, 1011 (9th Cir. 2009). A defendant's inadvertent or negligent act is not sufficient to constitute willfulness. Instead, willfulness "requires proof of specific intent to do something that the law forbids; more than a showing of careless disregard for the truth is required." *United States v. Loney*, 719 F.2d 1435, 1436 (9th Cir. 1983).

The government does not have to establish willfulness with direct evidence. *See Lord*, 404 F. App'x at 779. "Willfulness may be shown by means of circumstantial evidence alone." *United States v. Schiff*, 612 F.2d 73, 77–78 (2d Cir. 1979). Willfulness may be inferred from a variety of actions, including when an employer pays wages instead of remitting employment taxes or when there is a pattern of failing to pay over taxes for an extended period of time. *See Lord*, 404 F. App'x at 779; *see also Gilbert*, 266 F.3d at 1885 (paying net

11

wages to employees knowing that withholding taxes were not being paid to the IRS is an indicator of willfulness).

The Fourth Circuit has held that the intentional preference of other creditors over the United States is sufficient to establish the element of willfulness." *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) (internal quotations omitted); *see also Easterday*, 564 F.3d at 1011 (finding that the government is not required to prove that a defendant had the ability to meet his tax obligations in order to establish willfulness under Section 7202). "Even if other expenditures were necessary for operation of the business, this does not undermine a finding of willfulness." *United States v. Boccone*, 556 F. App'x 215 (4th Cir. 2014).

## D. Evasion of Payment

Count Two of the Indictment charges the Defendants with tax evasion, in violation of 26 U.S.C. § 7201. The elements of 26 U.S.C. § 7201 are:

1. A substantial tax deficiency;

2. An affirmative act constituting an attempted evasion of the tax; and

3. Willfulness.

*United States v. Moore*, 498 F. App'x 195, 215 (4th Cir. 2012).

Section 7201 proscribes a single crime—attempted evasion of tax—which can be committed in two distinct manners: (a) the willful attempt to evade or

12

defeat the *assessment* of a tax and (b) the willful attempt to evade or defeat the *payment* of a tax.  *See United Sates v. Mal*, 942 F.2d 682, 686–88 (9th Cir. 1991); *United States v. Dunkel*, 900 F.2d 105, 107 (7th Cir. 1990).  A defendant attempting to evade assessment generally attempts to prevent the government from determining the true tax liability.  A defendant attempting to evade payment generally seeks to evade the payment of the true tax liability by hiding assets from the government.

The Indictment in this case charges the defendants with evasion of *payment*.

### 1.    A substantial tax deficiency.

Evasion of payment usually occurs after the existence of a tax due and owing has been established, either by the taxpayer's reporting the amount of tax due and owing, by the IRS's examining the taxpayer and assessing the amount of tax deemed to be due and owing, or by operation of law on the date that the return is due, if the taxpayer fails to file a return and the government can prove that there was a tax deficiency on that date.  *See United States v. Daniel*, 956 F.2d 540, 542 (6th Cir. 1992).  The Fourth Circuit has held that "a formal assessment is not required to prove tax evasion" in the context of an evasion of payment case.  *United States v. Vaughn*, 254 F. App'x 175, 177 (4th

13

Cir. 2007) (unpublished) (citing *United States v. Silkman*, 156 F.3d 833, 835 (8th Cir. 1998)).

Although the Fourth Circuit requires a "substantial" tax deficiency, the bar for "substantial" is low. *See United States v. Goodyear*, 649 F.2d 226, 227–28 (4th Cir. 1981) (holding tax deficiencies totaling less than $24,000 sufficient to uphold the defendants' § 7201 convictions).

## 2. An affirmative act constituting an attempted evasion of the tax.

"The jury may infer a 'willful attempt' from 'any conduct having the likely effect of misleading or concealing.'" *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) (quoting *Goodyear*, 649 F.2d at 227–28). Even an activity that would otherwise be legal can constitute an affirmative act supporting a Section 7201 conviction, so long as the defendant commits the act with the intent to evade tax. *See United States v. Voigt*, 89 F.3d 1050, 1090 (3d Cir. 1996); *United States v. Jungles*, 903 F.2d 468, 474 (7th Cir. 1990) (taxpayer's entry into an "independent contractor agreement," although a legal activity in and of itself, satisfied "affirmative act" element of Section 7201); *United States v. Conley*, 826 F.2d 551, 556-57 (7th Cir. 1987) (use of nominees and cash with intent to evade payment of taxes).

Examples of affirmative acts of evasion of payment include placing assets in the names of others, using nominees to conduct business, buy and sell

14

assets, or conduct other financial transactions, or providing false information about assets or income to the IRS. *See United States v. Gonzalez*, 58 F.3d 506, 509 (10th Cir. 1995) (signing and submitting false financial statements to the IRS); *United States v. McGill*, 964 F.2d 222, 227–29, 232–33 (3d Cir. 1992) (defendant concealed assets by using bank accounts in names of family members and coworkers); *United States v. Brimberry*, 961 F.2d 1286, 1291 (7th Cir. 1992) (defendant falsely told IRS agent that she did not own real estate and that she had no other assets with which to pay tax); *United States v. Conley*, 826 F.2d 551, 553 (7th Cir. 1987) (defendant concealed "nature, extent, and ownership of his assets by placing his assets, funds, and other property in the names of others and by transacting his personal business in cash to avoid creating a financial record"); *United States v. Hook*, 781 F.2d 1166, 1168–69 (6th Cir. 1986) (defendant did not file a false return but concealed assets).

It is possible for a taxpayer to evade the payment of his or her taxes without making any misrepresentation. For example, a taxpayer who openly moves his assets beyond the reach of the IRS has committed an affirmative act of evasion. *See Kawashima v. Holder*, 132 S. Ct. 1166, 1175 (2012) ("[I]t is still true that the elements of tax evasion pursuant to § 7201 do not necessarily involve fraud or deceit.").

15

### 3. Willfulness.

The government must also prove that the defendants acted willfully.[3] The element of "willfulness" is common to many Title 26 prosecutions for criminal tax violations.  The word "willfully" has the same meaning for both misdemeanors and felonies.  *Pomponio*, 429 U.S. at 12; *Bishop*, 412 U.S. at 356–61.

### E. Failure to File a Tax Return

The elements of 26 U.S.C. § 7203 are:

(1) That the defendant was required by law to file a tax return for the year in question;

(2) That the defendant failed to timely file such a return; and

(3) That the failure was willful.

*United States v. Ostendorff*, 371 F.2d 729, 730 (4th Cir. 1967).

To meet its burden, the government need prove only that a person's gross income equals or exceeds the statutory minimum.  *United States v. Bell*, 734 F.2d 1315, 1316 (8th Cir. 1984); *United States v. Wade*, 585 F.2d 573, 574 (5th Cir. 1978).  Where the government is unable to present direct evidence of gross income, its burden may be satisfied by means of an indirect method of proof.

---

[3] The element of "willfulness" is common to many Title 26 prosecutions for criminal tax violations.  The word "willfully" has the same meaning for both misdemeanors and felonies.  *Pomponio*, 429 U.S. at 12; *Bishop*, 412 U.S. at 356–61.

16

*United States v. Bianco*, 534 F.2d 501, 503–06 (2d Cir. 1976); *United States v. Shy*, 383 F. Supp. 673, 675 (D. Del. 1974).

## III. <u>FACTUAL BACKGROUND</u>

**A.    The Parties and Entities**

The defendants, James E. Rice and Susan E. Rice, are married and have two children, C.R. and K.R.  In 1992, the defendants founded an orthopedic surgical practice in Pinehurst, North Carolina.  At the time, the business operated under the name Sandhills Orthopaedic & Spine Clinic, P.A.  In 2011, the defendants transitioned the business to a different entity, Sandhills Ortho & Spine Holdings PLLC.  In 2015, the defendants transitioned the business to yet another entity, Orthopaedic Care LLC.  Because the business operated at the same office, with the same phone number, and with mostly the same employees, the government will refer to these consecutive entities collectively as "Sandhills Orthopaedic."

Defendant James E. Rice is an orthopedic surgeon and ran the medical side of Sandhills Orthopaedic.  Defendant Susan E. Rice handled the administrative and financial side of the business.  At times, C.R. helped his father with the medical side of the business.  At times, K.R. helped her mother with the administrative and financial side of the business.  Sandhills

17

Orthopaedic had approximately seven to twelve non-Rice employees at any given time during the period relevant to the Indictment.

Defendant Susan E. Rice also owned and operated a truffle business that she operated through a variety of entities, some including the name "Black Diamond French Truffles."

The defendants formed various other entities relevant to Sandhills Orthopaedic: (1) NICOR, LLC, which the defendants appeared to use to hold real estate assets, among other purposes; and (2) Financial Solutions Management, Inc., which they used to distribute payroll for Sandhills Orthopaedic, among other purposes.

## B. The Period Before the Alleged Criminal Conduct Occurred

Defendant Susan E. Rice hired Sandhills Accounting Services, LLC ("SAS") to prepare Sandhills Orthopaedic's payroll for 2006. For all four employment tax quarters in 2006, Sandhills Orthopaedic filed Forms 941 and paid employment taxes. Sometime during the 2006 to 2007 time period, Defendant Susan E. Rice decided to no longer use SAS for Sandhills Orthopaedic's accounting needs and to instead perform Sandhills Orthopaedic's accounting in-house.

18

**C.    2007–2014: Employment Tax Return Filing and Payment Compliance**

Between January 2007 and December 2014, Sandhills Orthopaedic withheld trust fund taxes from its employees' wages. This time period includes 32 employment tax quarters. Sandhills Orthopaedic filed Forms 941 and paid trust fund taxes for the first two quarters of 2012, encompassing January to June of 2012. For the remaining 30 employment tax quarters between January 2007 and December 2014, Sandhills Orthopaedic late-filed Forms 941 in October 2016. Defendant James E. Rice signed the late-filed Forms 941 and admitted Sandhills Orthopaedic owed more than $500,000 total in trust fund taxes for those 30 employment tax quarters. As of August 2021, Sandhills Orthopaedic has not made any payments toward the trust fund taxes owed for this time period.

**D.    2007–2018: Individual Income Tax Return Filing and Payment Compliance**

The Defendants late-filed a 2012 Form 1040 in October 2014. On their 2012 Form 1040, the Defendants claimed the filing status of married filing jointly. Other than the late-filed 2012 Form 1040, the Defendants have failed to file any individual income tax return for the tax years 2007 to 2018.

Case 1:20-cr-00458-CCE    Document 39    Filed 09/10/21    Page 19 of 45

**E.     Corporate Tax Return Filing and Payment Compliance**

The Defendants have, as a general matter, failed to file corporate tax returns for the various entities they control.

Financial Solutions Management is of particular relevance to this prosecution. Defendant James E. Rice is the only registered corporate officer of Financial Solutions Management. As a corporation, Financial Solutions Management is required to file Forms 1120 to report its gross receipts and income, regardless of whether it actually earned income. The IRS has never received a corporate tax return for Financial Solutions Management.

**F.     Relevant Sandhills Orthopaedic Employees**

The government anticipates calling multiple witnesses who either previously or currently work for Sandhills Orthopaedic. Witness L.P. worked for Sandhills Orthopaedic from 2007 to 2013 as an X-Ray Technician. While an employee, she learned that the Social Security Administration did not receive reports from Sandhills Orthopaedic concerning its employees' wages and withheld Social Security taxes. In early 2009, she told Defendant James E. Rice about how the Social Security Administration did not have the appropriate records from Sandhills Orthopaedic. After early 2009, she continued to experience problems with the Social Security Administration regarding reported wages and withheld taxes.

20

Witness L.R. began working for Sandhills Orthopaedic in the early 1990s and continues to work for Sandhills Orthopaedic as an office manager. L.R. received co-payments from patients on behalf of Sandhills Orthopaedic. At the end of each day, L.R. would total the check and cash payments and text Defendant Susan E. Rice and K.R. the total payments. L.R. then deposited the check payments into Defendant James E. Rice's personal bank account and cash payments into Defendant Susan E. Rice's personal bank account.

## G. IRS Collection Efforts

In April 2015, the IRS assigned Revenue Officer Christopher Girardi to collect the unfiled Forms 941 and the unpaid employment taxes from Sandhills Orthopaedic. As part of RO Girardi's collection efforts, he mailed several notices to Sandhills Orthopaedic and the Defendants concerning their unfiled tax returns and unpaid taxes. He also spoke by phone with the Defendants' representative, Barbara Lamar, on several occasions.

In May 2016, RO Girardi interviewed Defendant James E. Rice to determine whether he was responsible for Sandhills Orthopaedic's employment taxes. As part of the interview, RO Girardi completed an IRS Form 4180 that recorded Defendant James E. Rice's answers to RO Girardi's questions. During the interview, Defendant James E. Rice admitted that he (1) determined financial policy for the business; (2) directed and authorized

payments of bills/creditors; (3) prepared, reviewed, signed, or authorized the transmittal of payroll tax returns; (4) had knowledge that withheld taxes were not paid; (5) authorized payroll; (6) authorized federal tax deposits; (7) authorized the assignment of account information for electronic federal tax payments; and (8) no other individuals performed those duties. Defendant James E. Rice signed the completed Form 4180.

RO Girardi continued to communicate with Barbara Lamar, and in October 2016, RO Girardi received signed Forms 941 for Sandhills Orthopaedic. RO Girardi eventually submitted the case as a fraud referral to the Criminal Investigations side of the IRS.

## H. Banking Activity

As described in the Indictment, the Defendants formed a variety of entities that had, at best, convoluted business purposes. Many did not make or sell products or services, and instead existed to own assets and create bank accounts. Either or both of the Defendants controlled the entities' bank accounts. Bank records show significant wire transfers from Sandhills Orthopaedic's bank accounts into these other bank accounts that the Defendants controlled, and then the Defendants made significant personal purchases against the entities' bank accounts.

22

## I. Personal Expenditures

During the period relevant to the Indictment, the Defendants spent significant sums of money on personal goods and services, including: a country club membership, a luxury dog kennel, multiple luxury rental residences, vacations to Aruba, vacations to cabins in the Blue Ridge Mountains, gambling in Las Vegas and elsewhere, and a spiritual advisor. The payments for these personal goods and services often came from bank accounts belonging to the various entities the Defendants controlled, including Sandhills Orthopaedic bank accounts.

## IV. LEGAL AND EVIDENTIARY ISSUES

### A. Reciprocal Discovery

On November 6, 2020, the government requested reciprocal discovery from defense counsel. Dkt. No. 32-1 at 2. To date, the government has not received any discovery from defense counsel.

### B. Stipulations

On September 5, 2021, the government proposed the following stipulations to defense counsel, along with a draft of the government's exhibit list:

1. Authenticity of the government's exhibits;

2. Admissibility of the government's exhibits;

23

3. Factual stipulations:

   a. Dr. and Mrs. Rice resided in Moore County, North Carolina from at least January 2007 through at least December 2016;

   b. Lilly Theresa Wiltfong was a spiritual advisor whom Mrs. Susan Rice consulted; and

   c. Beginning at least as early as 2015, Barbara Lamar represented Dr. James Rice and Mrs. Susan Rice during IRS Revenue Officer Christopher Girardi's collection actions against them and Sandhills Orthopaedic.

To date, defense counsel has not responded to the government's proposed stipulations.

## C. Rule 902(11) Certifications

Pursuant to notice filed on the docket of this case, Dkt. Nos. 26, 33 & 38, the United States intends to offer self-authenticating business records into evidence under Federal Rule of Evidence 902(11). Rule 902(11) provides in pertinent part for the self-authentication of "a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person . . . certifying that the record: (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice."

24

Rule 902(11) provides for the self-authentication of properly certified business records admissible under the business records exception codified by Rule 803(6). The Confrontation Clause ruling in the Supreme Court case of *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321–24 (2009) does not contradict Rule 902(11). There is ample authority that *Melendez-Diaz* does not apply to business records authenticated under Rule 902(11) because they are not testimonial in nature and, therefore, do not implicate the Confrontation Clause. In *Melendez-Diaz* itself, the Supreme Court drew a distinction between records created for business purposes and records created for purposes of trial. Quoting *Crawford v. Washington*, 541 U.S. 36, 56 (2004), the *Melendez-Diaz* Court declared "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example business records." 557 U.S. at 324. The Court explained that "[b]usiness . . . records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.*

Accordingly, because the records at issue here are non-testimonial business records that have been properly authenticated under Rule 902(11) they are admissible without the testimony of a custodian. *See United States v.*

*Ali*, 616 F.3d 745, 752 (8th Cir. 2010) (bank records that were self-authenticating under Rule 902(11) were properly admitted as business records under Federal Rule of Evidence 803(6) since "*Melendez-Diaz* . . . does not apply to the HSBC business records that were kept in the ordinary course of business. These documents were nontestimonial and thus do not implicate the Confrontation Clause."); *see also United States v. Yeley Davis*, 632 F.3d 673 (10th Cir. 2011) (no Confrontation Clause violation occurred in admitting phone records because they qualified as nontestimonial business records under Fed. R. Evid. 803(6) and certificates of authenticity presented under Fed. R. Evid. 902(11) were not testimonial); *see also United States v. Mallory*, 709 F. Supp. 2d 451, 455 (E.D. Va. 2010) (rejecting a Confrontation Clause challenge to Federal Express custodian Rule 902(11) certification and noting purpose of Rule 902(11) is to permit admission of records of regularly conducted business activity without requiring the testimony of a witness and observing "[t]o sustain Mr. Mallory's objection would amount to the absurd conclusion that the Supreme Court only ten years ago promulgated a rule that is unconstitutional in a significant percentage of its applications")

It is well established that a business's records may contain information provided by third parties and be authenticated by the business entity alone. "[T]here is no requirement that the records be created by the business having

26

custody of them." *United States v. Wein*, 521 F. App'x 138, 140 (4th Cir. 2013) (unpublished) (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (internal quotation marks omitted)); *see also United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993) (observing that "[s]everal circuits have held that exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy"). There is also no requirement that the custodian "confirm the accuracy of the record in order to be a qualified witness." *Wein*, 521 F. App'x at 140. Such an argument is, again, "directed to the weight of the evidence," and "does not affect the admissibility of the records." *Id.*

## D.    Statements by a Party Opponent

The government may offer statements made by the defendants. For example, defendant James E. Rice admitted to IRS Revenue Officer that he was responsible for paying Sandhills Orthopaedic's payroll taxes. A defendant's statement is not hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(A). Rather, the statement is an admission and it does not require any special guarantee of trustworthiness. *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party . . . . The

27

rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party.").

The government may also offer statements made by the defendants' representatives. For example, the defendants hired Barbara Lamar to represent the defendants in correspondence with the IRS. Statements by Barbara Lamar within her capacity as the defendants' representative are not hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(C) (providing an exception to hearsay for an opposing party's statements, offered against the opposing party, in which the statement "was made by a person whom the party authorized to make a statement on the subject").

## E.    Intrinsic and Extrinsic Evidence

Rule 404(b) of the Federal Rules of Evidence allows the introduction of other crimes or bad acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The government has previously filed a notice of its intent to present certain evidence that may be construed to fall under Rule 404(b), though the government maintains that the evidence is not subject to the rule because it is inextricably intertwined to the charged offenses. Dkt. No. 25.

The United States intends to present in its case-in-chief:

28

1. IRS records showing that the Defendants failed to file individual income tax returns from 2006 through 2011, and 2013 through 2018.

2. IRS records showing that the Defendants failed to file tax returns for Sandhills Orthopaedic and the other businesses that they owned.

3. Notices from the North Carolina Department of Revenue ("NC DOR") to Sandhills Orthopaedic informing it that it had failed to pay state employment taxes.

4. The Defendants' individual income tax return that they filed for the 2012 tax year.

The introduction of Items 1 through 3 of the proposed evidence is probative of the defendants' willfulness, an element of the failure to pay over payroll taxes pursuant to 26 U.S.C. § 7202. In addition, the defendants' prior history of filing employment tax returns, paying over payroll taxes, and dealings with the IRS on those issues demonstrate their knowledge that they were required to withhold, collect, account for and pay over those taxes during the quarters at issue and the failure to do so was not a result of accident, negligence or inadvertence. Item 4 of the proposed evidence is probative of the defendants' willfulness in regard to failing to file their individual income tax returns as alleged in Counts Five through Seven.

**F.    Summary Witness**

To assist the jury in the examination of income tax calculations and other evidence that will be introduced to prove the charges in the indictment, the

29

government intends to rely on a summary witness. In this case, the government will present IRS Revenue Agent ("RA") Kevin Cascante as its summary witness. The government previously provided notice of its intent to use the testimony of this witness. Dkt. No. 27.

RA Cascante will summarize evidence concerning a variety of topics and the government intends to introduce summary charts in order to summarize voluminous evidence pursuant to Federal Rule of Evidence 1006. The topics that RA Cascante will testify about include, among others, the defendants' unpaid employment, personal, and business taxes. The government does not intend for RA Cascante to present testimony concerning tax calculations that either he or the IRS performed. RA Cascante will also summarize evidence from bank records concerning the defendants' ownership of various bank accounts, personal expenditures they made from those accounts, and transfers of funds between the accounts.

As discussed, RA Cascante will provide summary evidence regarding topics such as the defendants' unpaid taxes and expenditures. The United States does not anticipate calling him for expert testimony. The only tax figures the government intends to question him about are employment taxes that Sandhills Orthopaedic itself assessed on employment tax returns it prepared. Further, any testimony that RA Cascante presents concerning the

30

defendants' transfer of funds between bank accounts and personal expenditures are the result of simple arithmetic. It is well-established that "[t]he nature of a summary witness' testimony requires that he draw conclusions from the evidence presented at trial." *United States v. Esser*, 520 F.2d 213, 218 (7th Cir. 1975). When a summary witness simply testifies as to what the government's evidence shows, he does not testify as an expert witness. *See United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998).

However, out of an abundance of caution, the United States has provided notice to defense counsel of intent to use expert testimony pursuant to Fed. R. Evid. 16(a)(1)(G) and will provide defense counsel with a summary of the testimony and a copy of the agent's resume.

Admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In determining whether to admit expert testimony, the trial court must decide whether an expert's testimony is both relevant and reliable. A district court has discretion to allow an IRS agent to testify as an "expert summary witness"

based upon the agent having heard the testimony of the other witnesses and having reviewed the government's exhibits. Given the assistance such an individual can provide to the jury, it has not been unusual in previous cases for an IRS agent to testify as an "expert summary witness." *See United States v. Stierhoff*, 549 F.3d 19, 28 (1st Cir. 2008); *United States v. Pree*, 408 F.3d 855, 869–70 (7th Cir. 2005); *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993); *United States v. Mohney*, 949 F.2d 1397, 1406 (6th Cir. 1991); *United States v. Bosch*, 914 F.2d 1239, 1242 (9th Cir. 1990).

The defendants have not provided notice of their intent to call an expert witness at trial.

## G. Summary Evidence

The use of summary charts is approved, and encouraged, especially when there are numerous documents or other items being summarized. *See, e.g.*, *United States v. Loayza*, 107 F.3d 257, 264 (4th Cir. 1997). In contrast to traditional demonstrative evidence, such charts and summaries are themselves the evidence. *See, e.g.*, *United States v. Nivica*, 887 F.2d 1120, 1125–26 (1st Cir. 1989); *United States v. Massachusetts Maritime Acad.*, 762 F.2d 142, 157 (1st Cir. 1985). After admission under Federal Rule of Evidence 1006, the charts and summaries may be used by the jury during deliberations

like any other piece of evidence. *United States v. Koskerides*, 877 F.2d 1129, 1134 (2d Cir. 1989).

The government intends to introduce summary charts under Rule 1006 to summarize various voluminous records, including records pertaining to the defendants' personal and business bank accounts and to show expenditures from the accounts. This information was reported in bank statements, which are admissible as business records pursuant to Federal Rule of Evidence 803(6) and have been certified as authentic pursuant under Federal Rule of Evidence 902(11). The summary charts will set forth the relevant data from the bank records in a manner that will make the otherwise voluminous records more convenient for examination by the jury. The United States has provided copies of the proposed charts to counsel for defendants in advance of trial for their review.

The government also intends to introduce summary charts under Federal Rule of Evidence 1006 to summarize the defendants' employment tax liabilities as well as personal and business tax return filing histories. The underlying information for these summary charts is found in IRS records which are admissible as business records pursuant to Federal Rule of Evidence 803(6) and have been certified as authentic under Federal Rule of Evidence 902(11). The summary charts will set forth the relevant data from the IRS

records in a manner that will make the otherwise voluminous records more convenient for examination by the jury. The United States has provided copies of the proposed charts to counsel for defendants in advance of trial for their review.

The information included in each of these summary exhibits is derived from admissible evidence and from exhibits the government intends to introduce at trial. The Fourth Circuit has indicated that summary charts comply with Rule 1006 if the chart summarizing evidence is accurate and the underlying records are otherwise admissible in evidence. *See United States v. Janati*, 374 F.3d 263, 272–73 (4th Cir. 2004). Additionally, the underlying documentation must be made available to the opposing party for examination. *See id*. at 273. As stated, the government previously made available to the defendants the documents underlying these summary charts. In addition, copies of these underlying documents will be marked as exhibits. The government will establish the accuracy of these summary charts through the testimony of RA Cascante, who has reviewed them. As such, the summary charts are properly admissible into evidence.

## H.    Improper Use of Law Enforcement Memoranda of Interview

The discovery in this case includes numerous interview reports from the IRS (memoranda of interview). Such reports cannot be used as the basis to

Case 1:20-cr-00458-CCE   Document 39   Filed 09/10/21   Page 34 of 45

impeach witness testimony nor can they be published to the jury.  Statements of witnesses, as set forth in interview reports, are not the statements written or adopted by the witnesses, and therefore cannot be used to impeach.

Law enforcement interview reports are not statements of the witness under the Jencks Act, which defines a statement as "a written statement made by said witness and signed or otherwise adopted or approved by him"; a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously"; or a statement made by a witness to the grand jury.  *See* 18 U.S.C. § 3500(e).  The Supreme Court has held that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced."  *See Palermo v. United States*, 360 U.S. 343, 352–53 (1959); *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) ("[W]hen a government agent interviews a witness and takes contemporaneous notes of the witness' responses, the notes do not become the witness' statement—despite the agent's best efforts to be accurate—if the agent does not read back, or the witness does not read, what the [agent] has written.") (internal quotation marks omitted)).

Thus, defendants should be precluded from introducing the contents of the interview reports to impeach witnesses on the basis of inconsistent

Case 1:20-cr-00458-CCE   Document 39   Filed 09/10/21   Page 35 of 45

statements because the interview reports are not the statements of the witnesses themselves. Moreover, they should be precluded from publishing the contents of the interview reports to the jury, or otherwise suggesting to the jury that the interview report is a statement of the witness.

## I. Potential Testimony of K.R.

The government believes that K.R. has potential criminal exposure related and unrelated to the crimes charged in this case's Indictment. The government does not intend to call K.R. as a witness in its case-in-chief but anticipates that the defendants may call K.R. as a witness.[4]

The potential testimony of K.R. raises several issues. First, it is important that K.R. has independent criminal defense counsel to advise her of her rights as a witness in the trial against the defendants. The government is currently unaware of whether K.R. has criminal defense counsel. The Court may want to request the Office of the Federal Public Defender to have someone ready to advise K.R. of her rights.

Second, assuming the defendants call K.R. to testify, the Court should ascertain whether K.R. intends to invoke the Fifth Amendment privilege on the witness stand. *See United States v. Appiah*, 690 F. App'x 807, 809 (4th Cir.

---

[4] At the time the government filed this trial brief, the Defendants have not filed their witness list.

36

2017) (approving district court decision to "conduct[] a proper voir dire hearing outside the presence of the jury to ascertain the questions defendant's counsel sought to pose and the scope of the privilege sought by the witnesses" where "[t]he district court permitted the witnesses' counsel to stand nearby and to confer, allowing the witnesses to assert the privilege, and the district court to rule, on a question-by-question basis").

Third, if she does intend to invoke the Fifth Amendment privilege, the Court should not let K.R. take the witness stand and plead the Fifth Amendment in front of the jury. *See, e.g.*, *United States v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008)[5] (finding no abuse of discretion where "[t]he district court found that placing [the defense's witness] on the stand solely to invoke his Fifth Amendment privilege would lead to 'unfair prejudice' in the form of both unwarranted speculation by the jury and the government's inability to cross-examine [the defense's witness]"); *id.* ("And any inferences that the jury might have drawn from [the defense witness]'s privilege assertion would have been only minimally probative—and likely improper—in any event."); *see also United States v. Hood*, 767 F. App'x 456, 461 (4th Cir. 2019) (finding no abuse

---

[5] Other Circuit Courts agree. *See United States v. Castro*, 129 F.3d 226, 231 (1st Cir. 1997); *United States v. Deutsch*, 987 F.2d 878, 884 (2d Cir. 1993); *United States v. Griffin*, 66 F.3d 68, 70 (5th Cir. 1995); *United States v. Mabrook*, 301 F.3d 503, 507 (7th Cir. 2002); *United States v. Castorena-Jaime*, 285 F.3d 916, 931 (10th Cir. 2002).

37

of discretion where district court refused to let the defendant call a witness who would have invoked the Fifth Amendment privilege).

In addition, the government is "not obligated to offer [a defense witness] immunity to testify." *United States v. Carrothers*, 639 F. App'x 910, 912 (4th Cir. 2016) (citing *United States v. Moussaoui*, 382 F.3d 453, 466 (4th Cir. 2004)).

## J. Jury Nullification

The Court should preclude defense counsel from inviting jury nullification in his opening statement, questioning of witnesses, and closing argument. *United States v. Muse*, 83 F.3d 672, 673 (4th Cir. 1996) ("Although a jury is entitled to acquit on any ground, a defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence[.]"); *see also United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("Accordingly, while jurors may choose to flex their muscles, ignoring both law and evidence in a gadarene rush to acquit a criminal defendant, neither the court nor counsel should encourage jurors to exercise this power. A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.").

For example, defense counsel should not be permitted to argue that this case should have been handled by the civil component of the IRS, rather than

38

through criminal prosecution.  *United States v. Summers*, 630 F. App'x 189, 192 (4th Cir. 2015) ("We conclude that the district court permissibly found that an argument that this case involved a family matter that should have been handled in a civil suit invited impermissible jury nullification.").

## K.  Evidence of Individual Income and Corporate Tax Loss

The Court should preclude the admission of evidence of the defendants' individual income and corporate tax losses, as it is not an element of any of the offenses in the Indictment.  The defendants are charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; one count of evasion of payment, in violation of 26 U.S.C. § 7201; two counts of failure to pay over trust fund taxes to the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7202; three counts of failure to file an individual income tax return, in violation of 26 U.S.C. § 7203; and the defendant James E. Rice is charged with three counts of failure to file corporate tax returns, in violation of 26 U.S.C. § 7203.

Count 1, conspiracy to defraud the United States in violation of 18 U.S.C. § 371, does not require the government to prove the government suffered a tax loss.  *Hammerschmidt*, 265 U.S. at 188 (holding that, to prove § 371, "[i]t is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be

39

defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention").

Counts 3 and 4, failure to pay over trust fund taxes to the IRS in violation of 26 U.S.C. § 7202, do not require the government suffered a tax loss. *See United States v. Lord*, 404 F. App'x 773, 775 (4th Cir. 2010) (listing elements of § 7202). Neither do Counts 5 through 10, failure to file a return in violation of 26 U.S.C. § 7203. *See United States v. Justin*, 450 F. App'x 304, 304 (4th Cir. 2011) (listing elements of § 7203).

Only Count 2, evasion of payment in violation of 26 U.S.C. § 7201, requires the government to prove a tax deficiency. *See Sansone v. United States*, 380 U.S. 343, 351 (1965) (listing, as one of the elements, "the existence of a tax deficiency"). Count 2 alleges that the defendants "willfully attempted to evade and defeat the payment of employment taxes due and owing by Sandhills Orthopaedic." Dkt. No. 1 at 16. At trial, the government will be required to prove that Sandhills Orthopaedic owed *employment* taxes to the government.[6] But the government will not have to prove that there was a tax

---

[6] To be clear, "a formal assessment is not required to prove tax evasion" in an evasion of payment case. *United States v. Vaughn*, 254 F. App'x 175, 177 (4th Cir. 2007) (unpublished) (citing *United States v. Silkman*, 156 F.3d 833, 835 (8th Cir. 1998)); *United States v. Daniel*, 956 F.2d 540, 542 (6th Cir. 1992).

40

due and owing on any entity's corporate tax returns or the defendants' individual income tax returns.

The defendants may attempt to introduce evidence at trial that the defendants had significant personal expenses or business expenses, and because of those expenses, they did not owe any individual income taxes or corporate taxes. Thus, the defendants might argue, the government did not suffer a loss from the defendants' failure to file individual income tax returns or corporate tax returns. This evidence, presumably, would involve an expert witness accountant performing tax calculations.

Any evidence or argument related to whether the government suffered a loss from the defendants' failure to file individual income tax returns or corporate tax returns should be excluded from trial under Rule 403 because it is not probative of the crimes charged and it would cause unfair prejudice, confuse the jury, and waste time. *See United States v. Johnson*, 558 F.2d 744, 746–47 (5th Cir. 1977) (affirming exclusion of tax loss evidence under Rule 403 because: (1) "[i]t could have resulted in unfair prejudice to the government's case by appealing to the emotions of the jury"; (2) "the danger of confusing the issues was great because tax liability was irrelevant to the offenses for which [the defendant] was tried"; and (3) it "could have resulted in a waste of time on

41

collateral issues"). In addition, such evidence would almost certainly needlessly lead to a "trial within a trial."

## L. Willful Blindness

Depending on the course of trial, the United States may request the Court instruct the jury on willful blindness. A jury may infer and rely on willful blindness where a defendant claims a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance. *United States v. Jinwright*, 683 F.3d 471, 480 (4th Cir. 2012) (defendant willfully blind to tax liability); *see also United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (deliberate ignorance instruction allowed where evidence supported defendant's willful blindness to fact that drugs were counterfeit). The two "basic requirements" for willful blindness are first, that there is a high probability that the defendant knew that a fact existed and that, second, the defendant took deliberate actions to avoid learning of the fact. *Id.*; *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011). A willful blindness instruction is appropriate where the evidence shows that defendant deliberately shielded himself from "clear evidence of critical facts." *United States v. Vinson*, 854 F.3d at 357.

In this case, the United States anticipates that one or both of the defendants will claim at trial that they lacked any knowledge of criminal tax

Case 1:20-cr-00458-CCE   Document 39   Filed 09/10/21   Page 42 of 45

fraud. However, the United States also anticipates that the evidence at trial will also show that such defendants may have made themselves deliberately ignorant of such wrongdoing. The evidence at trial will support an inference that the defendants "were aware of a *high probability* that they were violating the law and that the defendants *acted with deliberate disregard* to these facts." *Jinwright*, 683 F.3d at 480 (internal quotation marks omitted).

The government also intends to present evidence that the defendants actually knew of their tax code violations. "The government's presentation of evidence that the [defendants] actually knew of their tax code violations did not preclude it from seeking a willful blindness instruction." *Id.* at 479.

Case 1:20-cr-00458-CCE   Document 39   Filed 09/10/21   Page 43 of 45

# V. **CONCLUSION**

The foregoing is a summary of points the government expects may arise at trial. If any legal issues arise that have not been covered by this memorandum, the government respectfully requests permission to file a supplemental memorandum of law.

Respectfully submitted, this the 10th day of September, 2021.

SANDRA J. HAIRSTON
Acting United States Attorney

By:  _____

MICHAEL L. JONES
Trial Attorney
U.S. Department of Justice
Tax Division
DC Bar No. 1047027
150 M Street, NE
Mail Stop 1.1505
Washington, DC 20002
Tel:   (202) 514-0453
Fax:  (202) 514-0961
michael.l.jones@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will forward copies to counsel of record.

_____
MICHAEL L. JONES
Trial Attorney
U.S. Department of Justice
Tax Division

Case 1:20-cr-00458-CCE   Document 39   Filed 09/10/21   Page 45 of 45